**NOT FOR PUBLICATION**                                              [25; 35]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JEFFERY LEE MOURNING, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-590 (FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| CORRECTIONAL MEDICAL | : | |
| SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, UNITED STATES DISTRICT JUDGE**

Before the Court is the motion filed by Plaintiff Jeffrey Lee Mourning, pro se, a former

inmate at Bayside State Prison in Leesburg, New Jersey,[1] to set aside the Court's May 31, 2006

Order dismissing his case without prejudice, pursuant to a negotiated settlement agreement

between Plaintiff and Defendants Correctional Medical Services ("CMS") and Dr. William

Briglia (together "Defendants").  The settlement agreement was reached during oral argument on

Plaintiff's motion for preliminary injunctive relief, in which Plaintiff claimed that Defendants

had intentionally deprived him of medical treatment for the Hepatitis C virus ("HCV"), with

which Plaintiff is infected, and that Defendants had refused to agree to finance the cost of such

treatment after Plaintiff's release from prison.  Plaintiff argues that Defendants have breached the

settlement agreement between the parties by failing to immediately commence Plaintiff's HCV

---

[1] In an August 19, 2006 letter, Plaintiff informed the Court of his release from prison and
provided updated contact information.

treatment as he alleges they committed to do pursuant to the May 31, 2006 settlement.

Also before the Court is Plaintiff's motion to remove his pending state court action against Defendants from the New Jersey Superior Court to this Court. Additionally, I consider Defendants' emergent request for an order to show cause why Plaintiff should not be enjoined from filing further civil claims against them arising out of their alleged failure to treat his HCV. Specifically, Defendants request entry of an order barring Plaintiff from filing a class-based civil rights action against them, which Plaintiff threatened to do upon his release from prison. According to Defendants' counsel, Joel Schneider, of the law firm of Archer and Greiner, P.C., Plaintiff has also threatened similar litigation against Mr. Schneider, Archer and Greiner, P.C., and certain other of the firm's members and associates. Consequently, Mr. Schneider, on behalf of Archer and Greiner, P.C., and all other members and associates representing Defendants, seek the same relief by way of the proposed order to show cause.

For the reasons discussed more fully below, I find that Plaintiff has misapprehended the terms of the parties' settlement agreement, and that Defendants have performed their obligations thereunder. Accordingly, Plaintiff's motion to set aside my May 31, 2006 Order is denied, and the settlement agreement referred to therein shall be enforced. Further, because 28 U.S.C. § 1446 provides for removal of state court actions to federal court by a defendant only, Plaintiff's motion for removal is denied. Finally, I find that Defendants' request for an order to show cause, through which they seek, ultimately, a pre-filing injunction limiting Plaintiff's access to the courts is not warranted under the facts as they currently appear. Accordingly, Defendants' request for such an order is denied.

I.      BACKGROUND

In or around August of 2005, Plaintiff filed a complaint in the Superior Court of New Jersey, Cumberland County, in which he asserted claims against Defendants arising out of their alleged refusal to treat his HCV infection.  On February 9, 2006, Plaintiff filed a Complaint alleging similar claims against Defendants in this Court, together with a motion for preliminary injunctive relief.  Defendants filed timely individual answers to Plaintiff's Complaint and, on April 7, 2006, Plaintiff filed a second motion for preliminary injunctive, and other relief.[2]

On May 31, 2006, I heard oral argument on Plaintiff's motion for preliminary injunctive relief.  See Transcript of May 31, 2006 hearing ("T1").  I also heard testimony from Dr. Briglia and Dr. Lionel Anicette on behalf of Defendant CMS.[3]  Id. at 22-115.  At the conclusion of testimony and argument, the parties began to discuss on the record, and ultimately agreed upon, a settlement of Plaintiff's claims. T1:123-145.  In exchange for Plaintiff's agreement to dismiss his federal suit against them, Defendants agreed to make reasonable efforts to obtain third-party funding for Plaintiff's post-release HCV treatment, and, upon securing a written guarantee of such funding, begin treating Plaintiff. Id.141-44.

Specifically, Dr. Anicette explained that he would use his best efforts to persuade the

_____

[2] For reasons not clear from the record, no action was taken by Defendants or the Court on Plaintiff's first motion for preliminary injunctive relief.

[3] Among other things, Dr. Briglia testified that it was CMS' policy to provide inmates released during the course of HCV treatment with two-weeks additional treatment before terminating care. Id. at 68-69.  Dr. Briglia also explained that Plaintiff twice refused to sign informed consent waivers to receive HCV treatment because Plaintiff believed he might be released from prison during the treatment and did not want such treatment interrupted and terminated prematurely. Id. 31-38.  Instead, Plaintiff insisted on adding a clause to the release form, binding CMS to complete his HCV treatment in the event he was released during the course of such treatment. Id. at 35.  Since that was contrary to CMS policy, CMS did not assent to his demand.

Infectious Disease Department at Cooper Hospital ("Cooper") to accept Plaintiff as a patient, but that CMS could not begin treating Plaintiff until it secured funding for his post-release treatment. Id. at 126.  For clarification, the Court inquired of Dr. Anicette: "[i]f you had the indication from Cooper that [Plaintiff] is a good candidate for their program, and they are willing to put him into their program ... assuming there is funding, would that be the point at which you would start treatment?" Dr. Anicette replied: "Yes." Id. at 127.   The parties discussed matters further and I summarized their agreement with the following:

> The Court: ... We agree to resolve this today based upon the following: That immediately, Dr. Anicette's group, CMS, will contact Cooper to attempt to get you [Plaintiff] accepted into the continuation of treatment in their program upon your release. In addition, he will work with them to find the funding necessary. This is all going to be done in due speed ... which [may require] a six-to-eight week period. ... [A]s soon as that commitment is in place, you will begin your treatments in the prison; and then, upon your release, it will be picked up in the manner that has been described … That is agreeable to you, [Plaintiff]?
>
> Plaintiff: Absolutely.

Id. at 131-32.

Defendants' counsel, Mr. Schneider, also confirmed his understanding that the settlement agreement did not require CMS to begin treating Plaintiff while he was prison unless CMS secured a written guarantee of funding for Plaintiff's post-release treatment from a third party. Mr. Schneider stated: "[O]ur understanding is [that] we don't start treatment unless we get a written guarantee from a third-party payer that they are going to pay for Plaintiff's post-release treatment and evaluation." Id.  at 141.  Plaintiff also expressed his understanding that CMS was not guaranteeing that it would pay for his post-release treatment.  I explained: "[CMS] cannot make that guarantee, and Plaintiff understands that.  [CMS is] going to use its best efforts to get

4

that coordination in place with Cooper to make that happen, but it's not the guarantor of those payments." Id. at 133.  Plaintiff responded: "Yes, your Honor...." Id.  Later, I again clarified: "It's your agreement, [Plaintiff] that if [Defendants] find the funding or you get Medicaid to commit to it, that's when your treatment begins?" to which Plaintiff responded: "Yes." Id. at 143.  The parties also agreed that Plaintiff would be treated like all other prisoners in the event that CMS was unable to secure third-party funding for Plaintiff's post-release HCV treatment." Id. at 134.

At the conclusion of the parties' negotiations on May 31, 2006, I entered an Order memorializing the settlement between them and providing 120-days to reopen the case in the event the agreement was not consummated. Id. at 143-44.  On June 16, 2006, two weeks later, Plaintiff filed a motion to set aside my May 31, 2006 Order, and a motion seeking removal of his pending state court action against Defendants, entitled Mourning v. Aramark Corporation, et. al. Cum-L-051-06, to federal court.[4]  On June 21, 2005, Defendants sent a letter update to the Court and Plaintiff in which they described their unsuccessful efforts to secure third-party funding for Plaintiff's post-release HCV treatment.[5]  On July 5, 2006, Defendants filed opposition to Plaintiff's motions, and on July 14, 2006, Defendants filed an application for entry of an order to

---

[4] In an August 1, 2006 letter to the Honorable Garrett E. Brown, Chief Judge of the District Court for the District of New Jersey, Plaintiff complained that he was not in possession of a complete transcript of the May 31, 2006 hearing, at which the settlement agreement was reached.  In a subsequent letter to Judge Brown, on August 10, 2006, Plaintiff indicated that defense counsel had provided him with a full transcript of the hearing.

[5] CMS explained that its representatives and representatives of Bayside Prison had made inquiries on Plaintiff's behalf to the Cumberland County Health Clinic, the Cumberland County Board of Social Services and the Cumberland County Office on Aging, none of which were willing to commit to funding Plaintiff's post-release HCV treatment.  Defendants also stated that they had been made aware that Plaintiff is unable to apply for Medicaid before he is released from prison. See Defendants' June 29 Letter Update to the Court.

show cause why Plaintiff should not be barred from bringing a class-action civil rights suit, or

any other suit, against Defendants after his release from incarceration.  I discuss the parties'

various motions in turn.

## II.      DISCUSSION

### A.      The Parties' Settlement Agreement

Plaintiff asserts that Defendants have refused to comply with the terms of the settlement

agreement. See Plaintiff's Certification in Support of Motion to Set Aside Order and Removal of

State Action ("Pf. Cert.") at ¶ 6.  He argues that, pursuant to the settlement, Defendants were to

have begun his treatment "without further delay," regardless of CMS' ability to obtain a written

guarantee of funding for Plaintiff's post-release treatment from Cooper or Medicaid. Id. at ¶¶ 4-5.

Consequently, he asserts that Defendants have breached the settlement agreement and urges the

Court to vacate its May 31, 2006 Order.

New Jersey courts have long recognized the strong public policy favoring settlement of

litigation. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990); Borough of Haledon v. Borough of North

Haledon, 358 N.J. Super. 289, 305 (App. Div.2003).  Under New Jersey law, "an agreement to

settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a

court, absent a demonstration of fraud or other compelling circumstances, should honor and

enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App.

Div.1983); See also New York State Electric & Gas Corporation v. Federal Energy Regulatory

Commission, 875 F.2d 43, 45 (3d Cir. 1989) (applying contract principles in settlement dispute).

Indeed, New Jersey courts will "strain to give effect to the terms of a settlement wherever

possible." Dep't of Public Advocate v. NJ Bd. of Pub. Utilities, 206 N.J. Super. 523, 528 (App.

Div. 1985).  Consequently, a party seeking  to vacate a settlement agreement must present "clear and convincing proof" that the agreement should be vacated.  <u>DeCaro v. DeCaro</u>, 13 N.J. 36, 42 (1953).

The settlement agreement reached between the parties in this case is the product of an on-the-record negotiation.  The terms of the agreement are clear and unambiguous, and preserved in the transcribed record of the proceedings.  Plaintiff expressly consented to be bound by the terms of the agreement and has presented no clear and convincing evidence of fraud or other circumstances requiring the Court to vacate the agreement.  His apparent misapprehension of the specific terms of the agreement, without more, cannot serve as a basis to void the parties' agreement.  Defendants have observed their commitment to seek funding for Plaintiff's post-release HCV treatment.  The possibility that such efforts might not meet with success was a risk Plaintiff understood and expressly accepted  at the time of settlement.  Disappointed by Defendants' lack of success, Plaintiff may not now back out of his obligations under the agreement.  Accordingly, I shall enforce the parties settlement agreement, and Plaintiff's motion to set aside my May 31, 2005 Order is denied.

**B.     Plaintiff's Removal Motion**

In his Certification, Plaintiff argues that removal of his state court action to federal court is necessitated by the "the compounded nature of the Claims made that related to the State Court case."  <u>See</u> Pf. Cert. at ¶ 7.  Whatever the motivation for Plaintiff's request for removal, 28 U.S.C. § 1446 does not authorize a plaintiff to remove an action from state to federal court.[6]

---

[6] 28 U.S.C. §1443 states in relevant part: "any of the following civil actions … commenced in a State court may be removed *by the defendant* to the district court of the United States ...." (emphasis

Accordingly, Plaintiff's motion for removal is denied.

**C.      Defendants' Application for an Order to Show Cause**

Defendants and their counsel seek entry of an order to show cause why Plaintiff should not be barred from commencing additional litigation against them arising out of, or associated with, the facts of this case.  Their request is partially motivated by Plaintiff's June 7, 2006 letter to defense counsel's office in which Plaintiff threatened to file a class-based civil rights action against Defendants and defense counsel. See Exhibit C to the Affidavit of Joel Schneider, attached to Defendants' Application for an Order to Show Cause ("Ex. C").  In his June 7, 2006 letter, Plaintiff asserts that his class action is warranted by defense counsel's alleged statement at the May 31, 2006 hearing that: "CMS does not want prisoners ... to be informed of available treatment options ...." Id.  Defendants' ultimate goal is to obtain a pre-filing injunction against Plaintiff, pursuant to the All Writs Act, 28 U.S.C. § 1651.  Alternatively, Defendants urge the Court to enter an Order requiring pre-filing review of any in forma pauperis applications Plaintiff seeks to file after his release from prison, imposing scrutiny similar to that imposed on prisoner claims under the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2).

The All Writs Act authorizes a district court "to issue an order restricting the filing of meritless causes by a litigant whose manifold complaints raise claims identical or similar to those that have already been adjudicated." In re Oliver, 682 F.2d 443, 443 (3d Cir. 1982).  It is designed to permits a district court "to issue such injunctions to preclude abusive, groundless and

---

added).  The procedure for removal is set forth in § 1446(a) which states, "*a defendant or defendants* desiring to remove any civil action … from a State court shall file in the district court ...." (emphasis added).  There is simply no statutory authorization for a plaintiff to remove an action from state to federal court. See, e.g., Shamrock Oil & Gas Corporation v. Sheets, 313 U.S. 100, 104-05 (1941) (holding that a plaintiff may not remove to federal court a case he filed in state court).

vexatious litigation." Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993).  However, the Third

Circuit has acknowledged that a pre-filing injunction "is an extreme remedy 'that must be

narrowly tailored and sparingly used.'" See Abdul-Akbar v. Watson, 901 F.2d 329, 333 (3d Cir.

1990) (quoting In re Packer Ave. Associates, 884 F.2d 745, 747 (3d Cir. 1989)).

 As they currently appear, the facts simply do not support a finding that Plaintiff is a

vexatious litigator whose use of the courts has been exclusively frivolous or malicious.

Accordingly, the drastic relief sought by Defendants and their counsel is unwarranted at this

time.  I note Defendants' concern over the potentially frivolous nature of Plaintiff's threatened

class-based suit.[7]  However, Plaintiff has not filed such an action yet, and, based upon his recent

representations to the Court, he appears to have abandoned the intention to do so.[8]  Further, in the

context of this action, the claims Plaintiff has asserted thus far cannot be fairly described

frivolous.  Additionally, while Plaintiff's efforts in this litigation have been diligent and, indeed,

aggressive, they cannot be fairly characterized as vexatious.  Accordingly, I find Defendants'

request for a pre-filing injunction pursuant to 28 U.S.C. § 1651(a) premature at this time.  For the

same reasons, I find that imposition of the pre-filing review process urged by Defendants and

---

[7] There is support for Defendants' arguments that a pro se plaintiff cannot represent a class in such litigation. See Fed. R. Civ. P. 23(a); Fymbo v. State Farm, 213 F.3d 1320 (10th Cir. 2000) (holding that pro se plaintiff cannot be an adequate class representative); Ziegler v. Michigan, 90 Fed. Appx. 808 (6th  Cir. 2004) (same); Fowler v. Lee, 18 Fed. Appx. 104 (4th Cir. 2001) (same); Welch v. Terhune, 11 Fed. Appx. 747 (9th Cir. 2001) (same); Roberts v. McFeely, 2005 WL 1827941, *1 n.1 (D.N.J. 2005) (collecting cases).  Similarly, there is also support for defense counsel's argument that "statements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." See Thomas v. Ford, 137 F. Supp. 2d 575, 581 (D.N.J. 2001) (citing Peterson v. Ballard, 292 N.J. Super. 575, 581 (App. Div. 1996)).

[8] In his August 1, 2006 letter to Judge Brown, Plaintiff stated that he had "withdrawn" his intention to pursue the class-based action with which he earlier threatened Defendants and their counsel.

defense counsel is unnecessary under the facts as they currently exist.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to set aside the Court's May 31, 2006 Order dismissing his case is denied.  Further, Plaintiff's motion to remove his pending action against Defendants from state court to federal court, pursuant to 28 U.S.C. § 1443,  is denied.  Finally, Defendants' application for an order to show cause why Plaintiff should be enjoined from filing future actions against them and defense counsel is denied.

An appropriate Order shall follow.


/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge


Date: August 23, 2006.